1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TULALIP TRIBAL FEDERAL CORPORATION,<br><br>         Plaintiff,<br><br>  v.<br><br>THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>         Defendant. | Case No.<br><br>**COMPLAINT FOR BREACH OF CONTRACT AND VIOLATION OF COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Tulalip Tribal Federal Corporation ("TTFC") alleges the following causes of action against Defendant The Board Of Trustees Of The Leland Stanford Junior University ("Stanford").

## I.  INTRODUCTION

1.  The United States is experiencing the worst man-made epidemic in modern medical history—the misuse, abuse, and over-prescription of opioids.

2.  From 1999 to 2019, nearly 500,000 Americans lost their lives to an opioid overdose, more than eight times as many American lives as were lost in the entire Vietnam War.

COMPLAINT FOR BREACH OF CONTRACT AND
BREACH OF IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING - 1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

128096.0014/8616308.16

3.     Native Americans have been particularly devastated by this crisis.  According to the Centers for Disease Control and Prevention ("CDC"), by 2014, Native Americans had the highest death rate from opioid overdose of any demographic group in the United States.[1]



4.     Opioids have reshaped daily reality for the Tulalip Tribes (defined herein) in numerous ways, including increased and intensified emergency responses to overdoses; increased drug-related offenses affecting the victims of those crimes and the criminal justice system as a whole; additional resources spent on community and social programs; loss of workplace productivity due to opioid addiction among employees; higher worker's compensation costs due to opioid-related claims; and prevalent opioid abuse throughout the Tulalip Reservation which has caused a strain on the emotional, physical, and spiritual health of the community.

5.     To protect the tribal community's welfare and continued sovereignty, the Tulalip Tribes have been working to confront the epidemic in a variety of ways.  The Tribes spend substantial amounts of its budget and allocates significant resources on mitigation and treatment programs, social services, as well as criminal justice services.

6.     But while the Tulalip Tribes has committed considerable resources to fight the opioid crisis, the Tulalip Tribes realizes fully addressing the crisis also requires discovering and

---

[1]   Dan Nolan and Chris Amico, *How Bad is the Opioid Epidemic?*, Frontline (Feb. 23, 2016), https://www.pbs.org/wgbh/frontline/article/how-bad-is-the-opioid-epidemic/ (headings revised for clarity).

COMPLAINT FOR BREACH OF CONTRACT AND
BREACH OF IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING - 2

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

128096.0014/8616308.16

developing an actual medicine to treat opioid addiction and so it sought out and provided funding to a major research university to discover and develop a drug to treat opioid addiction.

7.     To that end, TTFC executed an agreement through which TTFC shared its confidential research information and proprietary data with Stanford's Behavioral and Functional Neuroscience Laboratory in the hopes of developing a cure and patenting it under TTFC's name. For its part, Stanford expressly promised to disclose the results of the research that used TTFC's confidential information and proprietary data.

8.     After the research yielded promising and patentable results for treating opioid addiction with an isolated fraction of natural cannabinoid oil extract, Stanford promptly broke their promise.  Based on information and belief, Stanford secretly duplicated TTFC's patentable, natural isolated fraction and applied for a provisional patent for a synthetic version.  Because this synthetic version derived from research that used TTFC's confidential information, proprietary data, and monies, it is the intellectual property of TTFC.

9.     Further, Stanford's refusal to disclose its synthetic provisional patent application to TTFC constitutes a material breach of its promise to disclose all results of the research that derived from TTFC's confidential information, proprietary data, and monies.

10.     TTFC therefore brings this action to hold Stanford accountable for its breach of contract, protect the value of TTFC's confidential information and proprietary data, and ensure that the goal of producing a cure for the opioid crisis has not been subverted.

## II. **PARTIES**

### A.     **Tulalip Tribal Federal Corporation.**

11.     Plaintiff Tulalip Tribal Federal Corporation ("TTFC") is a Tribal business corporation authorized under Section 17 of the Indian Reorganization Act of June 18, 1934 as amended (now codified at 25 U.S.C. § 477 as amended).  TTFC is wholly owned by the Tulalip Tribes and is the successor in interest to Tribal Economic Development Corporation, a Tribal business organized, chartered and wholly-owned by the Tulalip Tribes and established pursuant to

COMPLAINT FOR BREACH OF CONTRACT AND
BREACH OF IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING - 3

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

128096.0014/8616308.16

the Constitution of the Tulalip Tribes of the Tulalip Reservation, Washington, and pursuant to Tribal law, Tulalip Tribal Code Chapter 15.05.  TTFC's registered address is at 8802 27th Avenue NE, Quil Ceda Village, Washington.

**B.      Stanford.**

12.      The Board of Trustees of the Leland Stanford Junior University ("Stanford") are trustees of a trust with corporate powers under California law.  Cal. Educ. Code § 94000.  Stanford is located at 3000 El Camino Real, Suite 300, Palo Alto, California 94306.

### III.  <u>JURISDICTION AND VENUE</u>

13.      This Court has subject matter jurisdiction over this action because the amount in controversy exceeds $75,000 and the parties are citizens of different states.  Specifically, TTFC seeks to recover monetary damages in an amount to be determined at trial, but no less than $76,000.

14.      This Court has personal jurisdiction over Stanford because Stanford purposefully availed itself of the privilege of doing business in this District.  Stanford entered into multiple, multi-year contracts with TTFC, and Stanford knew TTFC resided and transacted business in the state of Washington.  Stanford reached into Washington to create continuing relationships and obligations with a resident of the forum and the forum itself.  These continuing relationships with Washington are evidenced by the extensive communications Stanford has had (and continues to have) with TTFC's Washington-based agents over multiple years.  Thus, Stanford specifically invoked the benefits and protections of Washington and must therefore submit to the forum's jurisdiction in return.

15.      Venue is proper in this district because a substantial part of the events giving rise to TTFC's claims occurred in this District including, but not limited to, Stanford's in-person visits and presentations to the Tulalip Tribes on the Tulalip Reservation.

### IV.  <u>BACKGROUND FACTS</u>

16.      It is well established that the United States faces an increasingly grave problem: the misuse, abuse, and over-prescription of opioids.  Much like other sovereign Indian nations,

COMPLAINT FOR BREACH OF CONTRACT AND
BREACH OF IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING - 4

128096.0014/8616308.16

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

the Tulalip Tribes has suffered profound consequences of the opioid epidemic.  The effects of the opioid epidemic on the Tulalip Tribes cannot be overstated.  Tulalip Enrollment Department records reflect that, since 2006, opioids caused the deaths of at least fifty-eight enrolled members.  Further, the overdose death rate for Native Americans is six times higher than it is for the white population in Snohomish County.[2]

17.     Since as early as 2006, the Tulalip Tribes have been interested in finding a workable solution to treating opioid addiction.  This problem is twofold for TTFC insofar as tribal members suffer a high rate of opioid and heroin addiction, far above the statistical norm in the United States.[3]  TTFC has recognized that a cannabis-based solution might not only help tribal members but could also address the global opioid epidemic, thus providing a morally, as well as financially, rewarding source of income, through commercialization of such a solution.

18.     On May 1, 2018, Stanford, on behalf of Stanford's Behavioral and Functional Neuroscience Laboratory Service Center (the "Stanford Center"), entered into and signed a Confidential Service Center Agreement:  Academic and Other Non-Profit Institutions, dated May 1, 2018, by and between the various Stanford University parties and the Tribal Economic Development Corporation (the "Service Center Agreement").  Director/Professor Mehrdad Shamloo executed the Service Center Agreement on behalf of the Stanford Center.

19.     On page 5 of the document, entitled "Scope of Work," the study was entitled "Evaluation of cannabis oil therapeutic effects in opioid addiction and Alzheimer's disease."  The "Statement of Purpose" in the Service Center Agreement states that the overall goal of the project is to study the efficacy of two novel medical cannabinoid flower extracts to:  (i) obviate or treat opioid dependence in a rat model of addiction, (ii) to improve the cognitive function and to reverse

---

[2] *https://www.snohd.org/DocumentCenter/View/648/Heroin-in-Snohomish-County-Mortality-and-Treatment-Trends-for-2015-PDF* at 7.

[3] According to the Centers for Disease Control and Prevention, Native Americans experienced the largest increase in drug and opioid-involved overdose mortality rates compared with other racial/ethnic groups.  Sujata Joshi *et al*, *Drug, Opioid-Involved, and Heroin-Involved Overdose Deaths Among American Indians and Alaska Natives — Washington, 1999–2015* (December 21, 2018)  https://www.cdc.gov/mmwr/volumes/67/wr/mm6750a2.htm.

COMPLAINT FOR BREACH OF CONTRACT AND
BREACH OF IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING - 5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

128096.0014/8616308.16

or prevent the pathological progression of the pathological malformation associated with Alzheimer's disease; and (iii) regulate the expression of the cathelicidin gene (CAMP).  The "Statement of Purpose" goes on to state that if there is evidence that cannabis oil extracts can achieve these earlier mentioned objectives, then further research would attempt to isolate the specific cannabinoids or terpenes and TTFC would pursue a patent for the isolated portion.

20.     In the "Background" statement for the project, the Service Center Agreement provides that the research takes a "novel approach" to test the hypothesis that certain cannabinoids and/or terpenes—that may or may not include CBD or THC—may stimulate pathways of interest, particularly the cathelicidin gene pathway.[4]  This is the brain pathway affected by Alzheimer's disease and may also provide a "novel approach" to determine why cannabis is so broad in its apparent health benefits to humans, including a possible solution to opioid and heroin addiction.

21.     Exhibit A of the Service Center Agreement shows that TTFC would pay approximately $2,000,000 for the completed study, which was expected to take about thirty (30) months.  As of the date of this Complaint, TTFC has paid $3,195,623.86 to fund this research study.

22.     Various sections of the Service Center Agreement provide that TTFC owns the results of the research, including the "Research Material" (Section 1), all confidential material (Section 3), the "Services Data" (i.e., data generated as a result of Stanford's research) (Section 10) and any inventions resulting from the services and relying on the "Research Material" provided by TTFC under the agreement (Section 11).  Stanford also agreed that it would promptly disclose all such inventions and assign to TTFC all of the related ownership rights.

23.     The Service Center Agreement was amended twice.  Under the "First Amendment," dated December 10, 2019, TTFC provided an additional $900,000 so that Stanford could continue to pursue "Fractionation of Cannabis Oil to Find Novel Patentable HPLC Fraction That Treats

---

[4] Cathelicidin antimicrobial peptides (CAMP) are polypeptides that, essentially, help the body fight off infections and various pathogens.

COMPLAINT FOR BREACH OF CONTRACT AND
BREACH OF IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING - 6

128096.0014/8616308.16

Opioid Addiction."  On page 3 of the First Amendment, Stanford promised to use the additional monies provided by TTFC to purchase supplies and equipment to perform its research.  Under the heading "AIM 1," the First Amendment states that researchers will use high performance liquid chromatography or "HPLC" to fractionate the cannabis extract.  The preparative HPLC isolated the most efficacious part of the whole cannabis plant extract—the THC-rich fraction of the oil (the "THC-rich fraction").

24.    The Second Amendment to the Service Center Agreement, dated November 30, 2020, extended the cannabinoid treatment study until September 30, 2021.  The Second Amendment continued the research using HPLC to fractionate cannabis extract, Pharmacokinetic, Pharmacodynamics, and Safety profiles of THC-rich and remainder fraction, and using THC-rich fraction as anti-inflammatory treatments under the study titled, "Evaluation of cannabis oil therapeutic effects in opioid addiction and Alzheimer's disease" pursuant to the First Amendment to the Service Center Agreement.  There were no additional costs or expenses incurred under this Second Amendment and "All other terms and conditions of the [Service Center] Agreement and First Amendment remain unchanged."  TTFC subsequently gave Stanford a "gift" of money pursuant to a Condition of Gift Award in Support of Stanford Faculty in the amount of $75,000.00.  The purpose of the gift was to support Professor Annelise Barron in Stanford's Department of Bioengineering for her laboratory's general research efforts.

25.    TTFC then gave Stanford three additional separate "gifts" of money in the amount of $75,000.00 each—with a cumulative total of $225,000.00.  The purpose of these gifts was to support Professor Annelise Barron in Stanford's Department of Bioengineering for her laboratory's general research efforts.  All of the "gift" arrangements provided that the use of these subsequent gifts award did not supersede any prior agreements between Stanford and TTFC, especially the parties' rights and obligations under the Service Center Agreement.

26.    Based on the foregoing, TTFC discovered that Stanford's principal investigators filed a patent application (without notifying TTFC) for inventions that, based on information and

COMPLAINT FOR BREACH OF CONTRACT AND
BREACH OF IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING - 7

128096.0014/8616308.16

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

belief, rely on TTFC's confidential information and proprietary data.  On June 11, 2021, representatives from TTFC and Stanford participated in a Zoom call to discuss the research progress and delivery of the final report detailing the patentable results of the TTFC-funded research.  In attendance on behalf of Stanford were Professors Annelise Barron and Mehrdad Shamloo.  During the call, Professor Mehrdad Shamloo disclosed that he wanted to focus on creating a small molecule with THC to treat addiction and derive a small molecule drug.  Professor Shamloo then added that Stanford's research could support two patents:  a TTFC patent focusing on the unique extraction process; and a provisional patent on a small molecule with a similar profile.

27.    After some additional discussion, Professor Shamloo and Professor Annelise Barron went on to state that they had already created a small molecule that mimics the THC fractionate and, as a result, they had filed a provisional patent application covering the small molecule subject matter.  During the discussion, Professor Shamloo seemed nervous about disclosing this matter.  Professor Shamloo offered to show TTFC the small molecule research, but only if TTFC signed a non-disclosure agreement.

28.    Before TTFC could formally respond during the video call, Professor Shamloo proceeded to put the slides onto the shared screen, on Zoom, detailing the small molecule development and explaining Stanford's process for filing what Stanford represented to be a separate provisional patent application.  Professor Barron noted that the subject matter of Stanford's provisional patent application was not covered by its research for TTFC.  Professor Barron insisted that Stanford had acted properly.  Based on the materials shown on the Zoom call and the explanations provided by Professor Shamloo and Professor Barron, TTFC realized that Stanford had chemically synthesized an analogue to the extraction derived from TTFC's confidential information, equipment, and funding, and filed a provisional patent application on that basis.

COMPLAINT FOR BREACH OF CONTRACT AND
BREACH OF IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING - 8

128096.0014/8616308.16

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

29.     Soon thereafter, TTFC sent Stanford a letter on June 25, 2021, requesting that Stanford provide for review (1) all of the Services Data under Section 10 of the Service Center Agreement; (2) all patent applications relating to the Service Center Agreement; (3) all papers filed with any patent receiving office; and (4) any grant applications related to the subject matter of the Service Center Agreement.

30.     On July 14, 2021, Stanford formally acknowledged that it had filed a patent application but refused to provide TTFC any of the requested documents and information.  Instead, Stanford disclaimed any obligation to disclose the requested Services Data, patent and grant applications, and related documents because Stanford's provisional patent application allegedly was limited to "synthetic chemical compounds" that purportedly did not rely on TTFC's confidential information or use monies provided by TTFC to Stanford.

31.     Stanford's excuse rings hollow.  Indeed, Stanford has embarked on a strategy to appropriate and commercialize intellectual property that belongs to TTFC under the Service Center Agreement, including data, research results, trade secrets, confidential information and potentially patentable subject matter.  Stanford has also used equipment and materials it purchased using monies provided to it by TTFC to pursue these ends.  Further, Stanford has refused to disclose to TTFC the inventions it conceived or reduced to practice using and relying on the confidential information TTFC conveyed to Stanford.

32.     If Stanford's hands were clean, Stanford would have responded to the TTFC demand letter in a more forthcoming manner.  For example, Stanford could have easily disclosed to TTFC the contents of its "synthetic" provisional patent application, subject to a nondisclosure agreement.  It also could have provided TTFC with incontrovertible documentation that evidenced the alleged separation of its "synthetic" provisional patent application from the "natural extract fractionates" patent application Stanford expects TTFC to file.  Stanford did not choose the forthcoming approach.  Instead, using monies and confidential information it received from TTFC, Stanford applied for a provisional patent application with the likely outcome that Stanford will

COMPLAINT FOR BREACH OF CONTRACT AND
BREACH OF IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING - 9

commercialize the inventions derived from TTFC's confidential information and proprietary data to enrich itself.

## V.  CAUSES OF ACTION

### First Cause of Action—Breach of Contract

33.     TTFC incorporates herein by reference the allegations in paragraphs 1-32.

34.     TTFC has performed its obligations and met all conditions precedent under the Service Center Agreement.

35.     This Service Center Agreement requires Stanford to disclose to TTFC all of the inventions and data derived from TTFC's confidential information and/or monies provided by TTFC to Stanford.  On information and belief, Stanford's synthetic provisional patent application is based on inventions derived from TTFC's confidential information, proprietary data, and from monies provided by TTFC to Stanford, under the Service Center Agreement.

36.     Stanford's failure to disclose its provisional patent application is therefore a material breach of the Service Center Agreement.

37.     As a direct and proximate result of this breach of contract, TTFC has been damaged in an amount to be determined at trial.

### Second Cause of Action—Breach of Covenant of Good Faith and Fair Dealing

38.     TTFC incorporates herein by reference the allegations in paragraphs 1-37.

39.     The Service Center Agreement contained an implied covenant that imposes on each party a duty of good faith and fair dealing.

40.     The agreed-upon purpose of the Service Center Agreement was that, in exchange for the monies given to Stanford by TTFC, TTFC would receive all of the tangible benefits that resulted from Stanford's research under the Service Center Agreement.

41.     By surreptitiously filing a provisional patent application based on inventions derived from TTFC's confidential information, proprietary data, and, monies provided by TTFC, Stanford unfairly frustrated and undermined the TTFC's reasonable expectations, thereby

COMPLAINT FOR BREACH OF CONTRACT AND
BREACH OF IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING - 10

128096.0014/8616308.16

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

depriving TTFC of the benefits of the Service Center Agreement. Stanford's actions therefore breached the Service Center Agreement's covenant of good faith and fair dealing.

## VI.  PRAYER FOR RELIEF

TTFC requests the following alternative and cumulative relief:

1.      That Stanford be preliminarily and permanently enjoined and restrained from directly or indirectly making, using, importing, exporting, offering for sale, or selling anything related to TTFC's confidential information, including data arising from or relating to the research performed by Stanford for TTFC;

2.      That the Court order Stanford to disclose its provisional patent application, and related, supporting materials for said application, to TTFC;

3.      A declaratory judgment by this Court ordering Stanford to assign all its right, title and interest in the inventions reflected in its provisional patent application to TTFC;

4.      That Stanford pay damages adequate to compensate TTFC for the breach of contract and breach of good faith claims in excess of $75,000;

5.      That TTFC be awarded prejudgment interest, post-judgment interest, and costs;

6.      That the Court order Stanford to refrain from disclosing or filing additional patent applications on TTFC's confidential information, including data arising from or relating to the research performed by Stanford for TTFC; and

7.      Such other and further relief as the Court may deem just and proper.

COMPLAINT FOR BREACH OF CONTRACT AND
BREACH OF IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING - 11

128096.0014/8616308.16

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

## VII.  JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims and of all issues so triable.


DATED:  October 1, 2021


LANE POWELL PC

By:    s/Steven B. Winters
      Steven B. Winters, WSBA No. 22393
      Kenneth R. Davis II, WSBA No. 21928
      Telephone:  206.223.7000
      winterss@lanepowell.com
      davisk@lanepowell.com

Attorneys for Tulalip Tribal Federal Corporation

COMPLAINT FOR BREACH OF CONTRACT AND
BREACH OF IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING - 12

128096.0014/8616308.16

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107